IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| STEVEN MONTGOMERY, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-20-1154 |
| CROTHALL HEALTHCARE, INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiff Steven Montgomery ("Montgomery" or "Plaintiff") filed this Complaint against Defendant Crothall Healthcare, Inc. ("Crothall" or "Defendant"), asserting against the Defendant a claim for retaliation under the Civil Rights Act of 1964 ("Title VII), 42 U.S.C. § 2000 *et seq.*, on the basis of three occasions on which he sought to be rehired by Crothall and was rejected. (ECF No. 1.) Presently pending before this Court is Defendant Crothall's Partial Motion to Dismiss (ECF No. 4) in which Crothall requests that this Court dismiss Montgomery's retaliation claim based on the company's first alleged refusal to rehire him in April 2015. The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons that follow, the Defendant Crothall's Partial Motion to Dismiss (ECF No. 4) is GRANTED and the Plaintiff's April 2015 claim is DISMISSED.

## BACKGROUND

1

This Court accepts as true the facts alleged in the Plaintiff's Complaint (ECF No. 1). *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011). From August 2011 to June 2014, Plaintiff Montgomery was employed as a Floor Technician/Housekeeper by Defendant Crothall, a company providing environmental services, patient transportation, facilities management, and laundry services, to healthcare providers in 45 states across the country. (ECF No. 1 ¶¶ 12, 16.) In February 2014, Montgomery underwent knee replacement surgery and was approved for protected leave under the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.*, from February 21, 2014 until May 15, 2014. (*Id.* ¶¶ 16, 17.) After a request for Americans with Disabilities Act ("ADA") Evaluation in April 2014, that leave was extended, and Montgomery returned to work on May 24, 2014. (*Id.* ¶¶ 19-22.)

Montgomery alleges that on or about June 16, 2014, he was sent home by a department manager, who informed him that his request for light duty could not be accommodated because no such work was available. (*Id.* ¶ 23.) Montgomery claims that the manager had misread his ADA paperwork and mistakenly believed that he had physical restrictions related to his knee surgery and had requested light duty as an accommodation under the ADA. (*Id.* ¶ 25.) He claims that although he informed the manager that he did not need and did not request light duty, the manager still instructed him to "go home and figure it out." (*Id.* ¶¶ 26-27.) He further asserts that he attempted to contact Crothall about returning to work, but such attempts were unsuccessful. (*Id.* ¶ 28.)

Montgomery applied for unemployment benefits. (*Id.*) When he did so, Crothall denied that he had been fired, instead asserting that he had requested light duty, left work early, and when he never returned to work, they assumed he had voluntarily quit for personal

2

reasons. (*Id.* ¶¶ 29, 30.) Despite this dispute, Montgomery's benefits were initially approved. (*Id.* ¶ 32.)

On October 30, 2014, Montgomery filed a Charge of Discrimination, alleging that Crothall discriminated against him on the basis of his sex by discharging him due to his manager's mistaken belief that he needed light duty when a female counterpart who sought light duty following knee replacement surgery was accommodated. (*Id.* ¶ 43 (citing EEOC Charge No. 12F-2015-00057).) This charge was investigated by the Maryland Commission on Civil Rights ("MCCR"). (*Id.* ¶ 35.) During this investigation, Crothall claimed that it was the company's understanding that Montgomery had been sent home for complaining about pain related to his knee surgery and that he was not terminated for failing to show up for his next scheduled shift, as his manager was under the impression that he was seeking additional treatment from his doctor and would return at a later date. (*Id.* ¶ 39.) In February 2015, Crothall and Montgomery began to engage in settlement discussions. (*Id.* ¶ 40.)

In March 2015, while the MCCR investigation was ongoing, Montgomery allegedly learned of an open position with Crothall from a friend, who gave him the phone number of a hiring manager named "Jazz." (*Id.* ¶ 47.) Montgomery claims that he contacted Jazz, who confirmed there was a position available. (*Id.* ¶ 48). Montgomery scheduled an interview for the position to be held on April 10, 2015. (*Id.*)

On April 7, 2015, the MCCR issued a written decision finding that there was no probable cause to believe that Crothall discriminated against Montgomery on the basis of his sex. (*Id.* ¶¶ 40-43.) At that time settlement discussions ceased. (*Id.* ¶ 45.) Montgomery attended the interview with Jazz, at which he indicated that he was engaged with Crothall in

an ongoing dispute regarding his previous employment with the company. (*Id.* ¶ 49.) Montgomery claims he tried to contact Jazz after the interview, but he never heard back from her about the position. (*Id.* ¶ 51.)

In or around late August or early September 2016, Montgomery alleges he heard about another position soon to be available with Crothall. (*Id.* ¶ 52.) He asserts that his former supervisors assured him he would be rehired, however, they subsequently advised him that he could not be rehired due to a note on their computer system which said he was "ineligible for rehire." (*Id.* ¶¶ 54, 55.) On October 10, 2016, Montgomery filed a second Charge of Discrimination with the EEOC claiming retaliation. (*Id.* ¶ 8 (citing EEOC Charge No. 531-2017-01018).)

In May 2017, Montgomery for a third time sought rehiring by Crothall. (*Id.* ¶ 55.) He alleges that he was told be would be hired. (*Id.*) However, he was again informed that his filed showed he was "ineligible for rehire." (*Id.* ¶ 56.) On September 17, 2017, Montgomery learned that someone else had been hired for the open position. (*Id.* ¶ 57.) On October 11, 2017, Montgomery amended his second EEOC charge, originally filed in 2016, to claim Crothall was engaged in ongoing retaliation against him. (*Id.* ¶ 8.)

On February 27, 2020, counsel informed Montgomery that the EEOC had found that there was no reasonable cause for his second EEOC charge. (*Id.* ¶ 9.) He then discovered that an undated and unsigned Dismissal and Notice of Rights bearing Montgomery's name had been uploaded to the EEOC public portal on February 5, 2020. (*Id.* ¶ 10.) Montgomery claims that he never received a signed and dated copy of the Dismissal and Notice of Rights, nor that a signed copy has since been uploaded to the portal. (*Id.* ¶ 11.)

On May 5, 2020, Montgomery filed his single-count Complaint in this suit, alleging retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000 *et seq.*, on the basis of the Defendant's three failures to rehire him in April 2015, September 2016, and September 2017.  (ECF No. 1.)  On July 10, 2020, Crothall filed a Partial Motion to Dismiss (ECF No. 4) claiming that to the extent Montgomery's claims are based on its failure to rehire him in April 2015, Montgomery has failed to exhaust his administrative remedies as required.

## STANDARD OF REVIEW

Defendant Crothall moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), under which the Plaintiff's pleading is subject to dismissal if it "fails to state a claim upon which relief can be granted."  Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P 8(a)(2).  The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).  A complaint need not include "detailed

factual allegations." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A complaint must, however, set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 556 U.S. at 678; *see A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

## ANALYSIS

To assert a Title VII claim in federal court, a plaintiff must first exhaust his administrative remedies. *See Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1851 (2019); *McCray v. Md. Dep't of Transp.*, 662 F. App'x 221, 224 (4th Cir. 2016). To exhaust, a plaintiff must file a "charge" of discrimination with the EEOC or an appropriate state or local agency within 180 days of when "the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1); *Williams v. Giant Food Inc.*, 370 F.3d 423, 428 (4th Cir. 2004). However, Maryland is a deferral state,[1] therefore, a claim must instead be filed no more than 300 days after the alleged unlawful employment practice. *See Garnes v. Maryland*, No. RDB-17-1430, 2018 WL 276425, at *4 n.8 (D. Md. Jan. 3, 2018); *see also Valderrama v. Honeywell Tech. Sols., Inc.*, 473 F. Supp. 2d 658, 662 n.4 (D. Md. 2007), *aff'd*, 267 F. App'x 256 (4th Cir. 2008).

Upon receiving a charge, the EEOC or relevant state or local agency must notify the employer and investigate the allegations. 42 U.S.C. § 2000e-5(b). If the investigating agency

---

[1] A deferral state is one with "a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof." 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(2). Maryland is classified as a deferral state due to the Maryland Commission on Human Relations, a state agency that is capable of providing relief from discrimination.

finds "reasonable cause" to believe the charge is true, it must "endeavor to eliminate [the] alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." *Id.*  If the EEOC or relevant agency cannot achieve a voluntary settlement, it may "bring a civil action" against the employer in court. *Id.* § 2000e-5(f)(1). On the other hand, where the investigating agency concludes there is "n[o] reasonable cause to believe that the charge is true," Title VII directs the investigating agency to dismiss the charge and notify the complainant of his right to sue in court. *Id.* § 2000e-5(b), f(1).  A plaintiff suing after denial of his or her claim by the EEOC has ninety days from receipt of notice of the denial in which to file suit.  42 U.S.C. § 2000e-5(f)(1).

The Supreme Court recently held that a plaintiff's failure to exhaust administrative remedies does not divest the court of jurisdiction. *Davis*, 139 S. Ct. at 1846.  Rather, exhaustion is a "claim-processing rule," and it is "'mandatory' in the sense that a court must enforce the rule if a party 'properly raises it.'" *Id.* (quoting *Eberhart v. United States*, 546 U.S. 12, 19 (2005) (per curiam)).  Although a defendant may waive arguments related to administration exhaustion, if the defendant asserts objections in a timely fashion such arguments may warrant dismissal under Rule 12(b)(6). *See Kenion v. Skanska USA Bldg., Inc.*, No. RDB-18-334, 2019 WL 4393296, at *4 (D. Md. Sept. 13, 2019) (discussing the import of *Davis*).

Defendant Crothall contends that to the extent Montgomery's claims are based on its alleged refusal to rehire him in April 2015, he has failed to exhaust his administrative remedies. (ECF No. 4-1.)  In *Nealon v. Stone*, the United States Court of Appeals for the Fourth Circuit held that a plaintiff is not generally required to exhaust retaliation claims before including a claim for retaliation in a subsequent lawsuit.  958 F.2d 584, 590 (4th Cir. 1992).  The court

provided that it "is the inevitable corollary of our generally accepted principle that the scope of a Title VII lawsuit may extend to any kind of discrimination like or related to allegations contained in the charge and growing out of such allegations during the pendency of the case before the Commission." *Id.* The court therefore reasoned that a claim of "retaliation for the filing of an EEOC charge as discrimination" is properly characterized as "like or reasonably related to and growing out of such allegations." *Id.* (internal quotation marks & alteration omitted). Therefore, a claim for retaliation can "relate back" to a plaintiff's properly filed EEOC charge.

However, in *Jones v. Calvert Group, Ltd.*, the Fourth Circuit clarified the meaning of its holding in *Nealon*. 551 F.3d 297, 303-04 (4th Cir. 2009). In *Jones*, the plaintiff filed a Title VII charge of discrimination with the EEOC on May 1, 2003. *Id.* at 299. That charge did not result in formal litigation and was not before the court. *Id.* at 304. The Fourth Circuit explained that to the extent the plaintiff's presently pending claim for retaliation related back to the May 2003 charge, the court did not have authority to consider the claim. *Id.* In doing so, the court cited *Franceschi v. U.S. Dep't of Veterans Affairs*, in which the First Circuit held that even though the plaintiff's claim for retaliation for filling an EEOC charged related back to that charge, the claim was not properly "exhausted" since the related EEOC charge was not properly before the court. 514 F.3d 81, 86-87 (1st Cir. 2008). Therefore, the Fourth Circuit in *Jones* stated that the "critical question" before the court was whether the plaintiff's retaliation claim related back to that *first* May 2003 EEOC charge, which was not before the court, or whether it instead related back to a *second* July 2005 EEOC charge that was properly before the court. *Jones*, 551 F.3d at 304. The court found the retaliation claim did relate back to the

8

second EEOC charge that was properly before the court and, therefore, held that the plaintiff had adequately exhausted her claim. *Id.*

In sum, a plaintiff is not generally required to file a separate EEOC charge for retaliation in order to bring a Title VII claim for retaliation to this Court. This makes practical sense. As the Fourth Circuit reasoned in *Nealon*, a plaintiff that has already been retaliated against one time for filing an EEOC charge will naturally be reluctant to file a separate charge, possibly bringing about further retaliation. 958 F.2d at 590. However, as the Fourth Circuit's reasoning in *Nealon* and its decision in *Jones* make clear, there is an important relationship between a plaintiff's claim for retaliation and his previous EEOC charge on which it is based. The Title VII claim for retaliation must relate back to an EEOC charge properly before the court.

In this case, Montgomery timely filed a charge of discrimination with the EEOC on October 30, 2014. (ECF No. 1 ¶ 34.) On April 7, 2015, MCCR issued a written decision finding that there was "no probable cause" that Crothall discriminated against him. (*Id.* ¶ 43.) Montgomery did not file a lawsuit based upon the denial of this charge, and since more than ninety days have passed since he became aware of the MCCR's decision, he cannot bring a lawsuit on the basis of that charge at this time. *See* 42 U.S.C. § 2000e-5(f)(1). Montgomery filed a second charge with the EEOC on October 10, 2016, and, in that charge, he did assert a claim for retaliation. (ECF No. 1 ¶ 8.) However, that second charge was filed more than 300 days after the Defendant allegedly retaliated against him in April 2015, and as such, any claim on that basis was untimely. *See Garnes*, 2018 WL 276425, at *4 n.8. Therefore, if Montgomery's claim for retaliation on the basis of the Defendant's failure to rehire him in

9

April 2015 relates back to any EEOC charge, it is the 2014 charge for discrimination. That charge is not properly before this Court. Montgomery has failed to exhaust his administrative remedies to the extent his claim for retaliation is based on the events in April 2015.

Montgomery's claims that equitable tolling allows his April 2015 claim to go forward is without merit. "Equitable tolling applies where the defendant has wrongfully deceived or misled the plaintiff in order to conceal the existence of a cause of action." *English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049 (4th Cir. 1987). To plead and prove equitable tolling, a plaintiff must "show that the defendant attempted to mislead him and that the plaintiff reasonably relied on the misrepresentation by neglecting to file a timely charge." *Id.* This requires the plaintiff to show that the defendant engaged in "*affirmative misconduct* intended to mislead or deceive him into missing the deadline." *Rock v. McHugh*, 819 F. Supp. 2d 456, 469 (D. Md. 2011) (emphasis added) (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89. 96 (1990)). Montgomery claims that when he sought reemployment in April 2015, he was unaware that his file was marked as "ineligible for rehire." (ECF No. 5-6.) However, he alleges no affirmative action taken by Crothall that prevented him from filing a claim for retaliation when the company did not rehire him in April 2015. Therefore, equitable tolling does not apply to Montgomery's claim based on the events of April 2015. *See Sparenberg v. Eagle Alliance*, JFM-14-1667, 2015 WL 6122809, at *31 (D. Md. Oct. 15, 2015) (holding equitable tolling did not apply where the plaintiff offered no evidence showing the defendant or any other external force prevented him from pursuing or discovering an Age Discrimination in Employment Act or Title VII claim).

## CONCLUSION

For these reasons, the Defendant Crothall's Partial Motion to Dismiss (ECF No. 4) is GRANTED.  Accordingly, Plaintiff's Count I claim for retaliation with respect to April 2015 is DISMISSED.

A Separate Order follows.

Dated: January 8, 2021

_____/s/_____
Richard D. Bennett
United States District Judge