IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | | |
|---|---|---|
| STEVEN MONTGOMERY | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| | ) | |
| v. | ) | Civil No. **1:20-cv-1154-RDB** |
| | ) | |
| CROTHALL HEALTHCARE, INC. | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION**
**FOR A PROTECTIVE ORDER**

Plaintiff Steven Montgomery ("Plaintiff" or "Mr. Montgomery"), through his undersigned counsel, respectfully submits his Response in Opposition to Defendant Crothall Healthcare, Inc.'s ("Defendant" or "Crothall") Motion for a Protective Order in connection with Plaintiff's Notice of Deposition pursuant to Federal Rule of Civil Procedure 30(b)(6). The parties, through counsel, conferred on the issues before the Court and were unable to come to an agreement despite their efforts [*See* ECF 23-2 LR 104.7 Certification].

The parties' discovery dispute focuses on if, and to what extent, Defendant may bar the Plaintiff from discovering facts that call one of Defendant's defenses into question. Specifically, Defendant has introduced a declaration from Scott Wise that walks the reader through how and when Defendant Crothall reported Plaintiff Steven Montgomery's

employment and post-employment status internally from 2011 through April of 2015 and why those changes occurred in its various databases [*See* ECF No. 23-6 Declaration of Scott Wise]. Defendant now seeks to improperly prevent the Plaintiff from attacking those assertions by baring the Plaintiff from discovering how and when Defendant Crothall reported Plaintiff Steven Montgomery's employment and post-employment status to various outside adjudicative bodies from 2011 through April of 2015 and why they reported what they reported.

Essentially, Defendant baldly believes that the Declaration of Scott Wise is dispositive to the case [ECF 23-1 FN3] and does not want any facts that would call the Declaration into question introduced into evidence (or even discovered) including any inconsistencies between what was reported internally in its database and what was reported externally to various adjudicative bodies.

This is a discovery dispute the Court can easily dispose of in the Plaintiff's favor through a straight-forward Fed. R. Civ. P. 26(b) analysis.

## I.     BACKGROUND

Plaintiff brings this action against Crothall alleging that that the company retaliated against him after he filed a Charge of Discrimination in October 2014 by refusing to rehire him on three separate occasions when he applied for or inquired into employment with Defendant.

Plaintiff worked for Defendant from 2011 to June of 2014 when Defendant terminated his employment. In 2014 Plaintiff filed a Charge of Discrimination claiming

disparate treatment on the basis of sex. In attempting to settle his claims, Crothall offered the Plaintiff $1,000 and reinstatement of his employment in early 2015. Plaintiff made a counteroffer and before Crothall responded, the Maryland Commission on Civil Rights ("MCCR") — the adjudicative body processing and investigating Mr. Montgomery's charge — issued a no cause finding heavily relying on Crothall's assertions that Mr. Montgomery has not suffered any adverse action because he was still an "active employee" in their database. Having previously worked for Defendant, having recently been offered reinstatement, and having been told that he was an active employee in the system, Mr. Montgomery sought reemployment with Defendant on three separate occasions and was ignored or affirmatively turned away.

In 2016 Mr. Montgomery filed a Charge of Discrimination alleging that he suffered the adverse action of failure to hire in retaliation for filing his initial Charge of Discrimination in 2014. Subsequently, Mr. Montgomery filed the instant action presently before the Court.

During this lawsuit, Crothall has framed that the adverse action that Mr. Montgomery is alleged to have suffered from was his designation as "ineligible for rehire" in Defendant's database. Mr. Montgomery however alleged that the adverse action he suffered was Defendant's failure to rehire him despite his qualifications.

## II. PLAINTIFF'S ALLEGATIONS

### A. Plaintiff's Underlying Sex Discrimination Charge is the Protected Activity That Forms the Basis for the Retaliation Claim Before This Court

Plaintiff was employed by Crothall as a Floor Technician/Housekeeper from August 2011 to June 2014 working at Union Memorial Hospital in Baltimore, Maryland. (Compl. ¶¶ 1-13). In March 2014, Crothall granted Plaintiff's request for leave under the Family and Medical Leave Act ("FMLA") from February 21, 2014 until May 15, 2014. (*Id.* ¶ 17). Plaintiff returned to work and resumed his full job duties on May 24, 2014. (*Id.* ¶ 22). Department Manager Kenny Carrington discharged Plaintiff on June 16, 2014, stating that his request for light duty could not be accommodated. (*Id.* ¶¶ 23, 24). Plaintiff told Mr. Carrington that he neither requested nor required light duty, but Mr. Carrington responded to Plaintiff to "just go home and figure it out." (*Id.* ¶¶ 26-27).

Plaintiff then made number of attempts to contact Crothall about returning to work, but those attempts were unsuccessful. (*Id.* ¶ 28). At a hearing before the Maryland Department of Labor – Division of Unemployment Insurance ("Maryland Unemployment") — an adjudicative body — Crothall informed the claims examiner that Mr. Montgomery "voluntarily quit for personal reasons." (*Id.* ¶ 30).

Plaintiff then filed a Charge of Discrimination on October 30, 2014, claiming that Crothall had discriminated and discharged him on the basis of his sex. (*Id.* ¶ 34). At a subsequent fact-finding conference, Crothall's managers "repeated the same false narrative that Mr. Montgomery had failed to return to work after he was asked to provide a doctor's note." (*Id.* ¶ 37). Crothall also claimed that he remained an "active employee" in the employee database despite earlier making statements to Maryland Unemployment that Mr. Montgomery was not an active employee but rather a voluntary quit. (*Id.* ¶¶ 30-38).

In early April 2015, Crothall offered Mr. Montgomery reinstatement of his employment and $1,000 (*Id*. ¶ 41). Subsequently, on April 8, 2015, the Maryland Commission on Civil Rights issued a written finding of no probable cause. (*Id.* ¶ 43).

### B.  Plaintiff Attempts To Get Rehired.

In late summer of of 2016, Plaintiff communicated with Defendant's manager Marlon Davis about an open position (*Id*. ¶¶ 52-56). Mr. Davis advised Plaintiff that he could not rehire him because the information in Crothall's computer system reflected that Plaintiff was "ineligible for rehire." (*Id.*). In the Spring and Summer of 2017, Mr. Davis told Plaintiff that he was planning to rehire him, but he had to figure out how to "override" the fact that Plaintiff had been designated "ineligible for rehire" in Crothall's computer system. (*Id.* ¶ 55-58). Plaintiff was not hired by Mr. Davis. (*Id.*). After learning that someone else had been hired, Plaintiff allegedly called Mr. Davis on September 17, 2017 and Mr. Davis allegedly told Plaintiff that he was unable to rehire him so long as he remained designated "ineligible for rehire" in Crothall's computer system. (*Id.* ¶ 58).

### III.  ARGUMENT

### A.  Standard of Review

Pursuant to Fed. R. Civ. P. 26(c), a party, upon a showing of good cause, may obtain from the Court an order to protect the party from annoyance, embarrassment, oppression, and/or undue burden or expense. *See* Fed. R. Civ. P. 26(c). Although the good cause requirement creates a hurdle for proponents, Rule 26(c) "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Furlow v. U.S.,* 55 F.Supp.2d 360, 366 (D.Md.1999) (quoting *Seattle Times*

*Co. v. Rhinehart,* 467 U.S. 20, 36 (1984)). Accordingly, the Court may order, *inter alia*, that certain discovery not be had or only on specified terms and conditions. *See* Fed. R. Civ. P. 26(c).

"The party seeking discovery has the burden to establish its relevancy and proportionality, at which point the burden shifts to the party resisting discovery to demonstrate why the discovery should not be permitted." *O'Malley v. Trader Joe's East, Inc.,* No. 19-cv-3273, 2020 U.S. Dist. LEXIS 191792, *5-6. (D. Md. Oct. 15, 2020) *citing Mach. Sols., Inc. v. Doosan Infracore Am. Corp.*, 323 F.R.D. 522, 526 (D.S.C. 2018).

### B. The Discovery Dispute

As explained herein, the issue is if, and to what extent, Defendant may bar the Plaintiff from discovering facts that call one of Defendant's defenses into question. Specifically, Defendant has introduced a declaration from Scott Wise that walks the reader through how and when Defendant Crothall reported Plaintiff Steven Montgomery's employment and post-employment status internally from 2011 through April of 2015 and why those changes occurred in its various databases [*See* ECF No. 23-6 Declaration of Scott Wise]. Defendant now seeks to improperly prevent the Plaintiff from attacking those assertions by baring the Plaintiff from discovering how and when Defendant Crothall reported Plaintiff Steven Montgomery's employment and post-employment status to various outside adjudicative bodies from 2011 through April of 2015 and why they reported what they reported.

Essentially, Defendant baldly believes that the Declaration of Scott Wise is dispositive to the case [ECF 23-1 FN3] and does not want any facts that would call the

Declaration into question introduced into evidence (or even discovered) including any inconsistencies between what was reported internally in its database and what was reported externally to various adjudicative bodies.

This is a discovery dispute the Court can easily dispose of in the Plaintiff's favor through a straight-forward Fed. R. Civ. P. 26(b) analysis.

### C.  The Specific 30(b)(6) Topics

**Plaintiff's 30(b)(6) Topic 7:** Mr. Montgomery's employment status as reflected in Crothall's personnel records from 2014 through today and be able to identify when any changes occurred and why those changes occurred (the relevant statuses Plaintiff will be asking about are active employee, voluntary quit, terminated, ineligible for re-hire (or similar).

**CROTHALL'S OBJECTIONS:** Crothall objects to the phrase "personnel records" because it is vague and ambiguous, and subject to multiple interpretations. Crothall also objects to this Topic on the grounds that it will not litigate or relitigate Plaintiff's underlying discrimination claims. As such, it will not designate a corporate representative to discuss 'why" any changes were made. <u>Nonetheless, Crothall will designate Scott Wise to discuss how Plaintiff's employment status information is recorded and reflected in Crothall's IT personnel systems, including when such changes occurred</u>.

**[Deficiency of Crothall's Objection]:** Defendant's objection that providing discoverable information as to the changes in Mr. Montgomery's employment status is akin to relitigating the issue does not hold water. Mr. Montgomery alleged that his employment status with Defendant went from employed to voluntary quit back to active employee to ineligible for re- hire. Those changes and "why" associated with them are absolutely discoverable given that his employment status and the changes thereto are at the heart of the adverse action suffered by Mr. Montgomery and therefore, we expect the witness to testify to this subject.

**Plaintiff's 30(b)(6) Topic 8:** The factual basis for Crothall's assertion made to the Maryland Department of Labor Division of Unemployment Insurance that Mr. Montgomery voluntarily quit.

**Plaintiff's 30(b)(6) Topic 9:** The factual basis for Crothall's assertion made to the Maryland Commission on Civil Rights (MCCR) that Mr. Montgomery remained an active employee.

**CROTHALL'S OBJECTION TO BOTH TOPICS:** Crothall objects to this Topic because it is not relevant to "any party's claim or defense." Fed. R. Civ. P. 26(b)(1). In that regard, this topic relates to an unemployment hearing, a discrimination claim that was never pursued in court by Plaintiff, and a claim that the Court has already dismissed, and Crothall will not litigate or relitigate this issue. *See Proa v. NRT Mid- Atlantic, Inc.*, No. 5-cv-2157, 2018 U.S. Dist. LEXIS 129572 (D. Md. June 20, 2008) (struck corporate deposition topic related to dismissed claim*); Reid v. Temple Univ. Hosp. Inc.*, No. 17-cv- 2197, 2019 WL 952306, at *1 (E.D. Pa. Feb. 27, 2019) (struck corporate deposition topic related to dismissed claim). Crothall, relatedly, objects to this Topic because it is not "proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). That is, Plaintiff's (unfounded) belief that his former managers designated him as "ineligible for rehire" in its personnel system is verifiably false, and Crothall has identified a corporate designee to discuss that Topic.

**[Deficiency of Crothall's Objections]:** Defendant's objection that providing discoverable information as to the changes in Mr. Montgomery's employment status is akin to relitigating the issue does not hold water. Mr. Montgomery alleged that his employment status with Defendant went from employed to voluntary quit back to active employee to ineligible for re- hire. Those changes and "why" associated with them are absolutely discoverable given that his employment status and the changes thereto are at the heart of the adverse action suffered by Mr. Montgomery and therefore, we expect the witness to testify to this subject

### D. Relevancy of the Discovery Sought

Defendant claims that the discovery sought is irrelevant. Plaintiff advances the following arguments with respect to relevancy:

Mr. Montgomery alleged — and uncovered — Defendant's corporate practice (or pattern) of knowingly lying and/or being intentionally misleading to adjudicative bodies with respect to his employment status [Complaint ECF No.1 ¶¶ 28-46]. Specifically, Mr. Montgomery alleged that after he was terminated by Crothall in 2014, they falsely informed Maryland Department of Labor, Division of Unemployment Insurance ("Maryland Unemployment") that Mr. Montgomery's termination of employment was a result of a voluntarily quit. [EXHIBIT A - SMONTGOMERY 017-024]. Crothall made that assertion in July of 2014. [*Id.*]

Remarkably, approximately six (6) months later — in responding to Mr. Montgomery's Charge of Discrimination — Crothall changed its tune and told the Maryland Commission of Civil Rights ("MCCR") — another adjudicative body — that Mr. Montgomery's employment had not terminated, and he was still an active employee with Defendant. [EXHIBIT B Crothall 1494-1524 Position Statement to MCCR dated 12/22/2014]. This was not an assertion made in passing. This false or misleading statement was specifically made to give the MCCR the impression that Mr. Montgomery had not suffered any adverse action, was free to go back to work, and that Mr. Montgomery had failed adequately state a claim of discrimination. [*Id.*].

Then, almost immediately after making the assertion that Mr. Montgomery was still considered an "active employee" to the MCCR adjudicative body, Crothall surreptitiously — without notifying the MCCR or Mr. Montgomery — changed Mr. Montgomery's status as an active employee to a terminated employee in February of 2015. [EXHIBIT C - Crothall's Answers to Interrogatories No. 12]. However, Crothall did not stop there, they then actually retroactively changed Mr. Montgomery's termination date back to July of 2014 [*Id.*].

In April of 2015, the MCCR issued a no cause finding. [EXHIBIT D MONTGOMERY 025-035]. Their statement of written findings heavily relied on Crothall's assertions that Mr. Montgomery was still considered an active employee. [*Id.*]. Also in April of 2015, Crothall marked Mr. Montgomery's rehire status as "none." [*See* ECF No. 23-6 - Declaration of Scott Wise exhibit A2].

Now, before this adjudicative body, Crothall continues to make self-serving assertions with respect to Mr. Montgomery's employment status. Crothall has submitted a declaration that walks the reader through Mr. Montgomery's employment status in its computer systems from 2011 to 2015 [*Id.*] and asserts that because of this declaration ". . .the court will likely grant Crothall's upcoming motion for summary judgment." [ECF No. 23-1 FN 3]. **Defendant wants to highlight and selectively use the history of Mr. Montgomery's employment status with Defendant to prove its case but wants to bar Plaintiff from discovering facts regarding the same, from the same period, to prove his case or to discredit Defendant's defense.**

Defendant contends the history and progression of Mr. Montgomery's employment status as reported to adjudicative bodies and the reasons for the changes "have absolutely no bearing" in this case. [ECF 23 – Crothall's Motion for Protective Order]. Nevertheless, Defendant relies heavily on the history and progression of Mr. Montgomery's employment status as reported in its computer systems to muster a defense. [*Id.*].

In short, Defendant has failed to adequately prepare a witness to testify to Mr. Montgomery's 30(b)(6) Deposition Notice. The topics in dispute are relevant because:

- They highlight Defendant's established corporate pattern or practice of making self-serving statements without regard for the truth to adjudicative bodies regarding Mr. Montgomery's employment status.
- They go to Defendant's credibility.
- They call into question Defendant's defenses.

- Defendant has used selective facts regarding Mr. Montgomery's employment status from the same time period to mount a defense and these topics seek additional facts regarding the same from the same time period.

## IV.   CONCLUSION

Based on the foregoing Defendant's Motion for Protective Order should be denied and Defendant should be further ordered to prepare a witness to testify to Plaintiff's 30(b)(6) topics 7, 8, 9 in their entirety.

**DATED: 02/10/2022**

                                              Respectfully submitted,

                                                               /s/

David Baña (Bar No. 21292)
4305 Saint Paul Street
Baltimore, MD  21218
Tel.: (443) 742-2390
Fax: (410) 670-7573
E-mail: david@davidbana.com

*Attorney for Plaintiff Steven Montgomery*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 10th day of February 2022, a copy of Plaintiff Steven Montgomery's Response in Opposition to Defendant's Motion for Protective Order was filed with the Court and delivered via CM/ECF to the following:

Steven E. Kaplan (Md. Fed. Bar #16531)
skaplan@littler.com
Bradley C. Tobias (Md. Fed. Bar # 20782)
btobias@littler.com
815 Connecticut Avenue, N.W., Suite 400
Washington, D.C. 20036
202.842.3400 (telephone)
202.842.0011 (facsimile)

*Attorneys for Defendant*

                                            /s/ David Baña
                                            David Baña

                                            *Attorney for Plaintiff Steven Montgomery*